IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 13, 2018 Session

## STATE OF TENNESSEE v. STEVEN W. DAVIS

**Appeal from the Circuit Court for Bedford County**
No. 18139      Forest A. Durard, Jr., Judge

_____

### No. M2017-00596-CCA-R3-CD
_____

A Bedford County jury convicted the Defendant, Steven W. Davis, of attempted rape and attempted incest. The trial court imposed an effective six-year sentence. On appeal, the Defendant contends that the trial court erred when it sentenced him by misapplying an enhancement factor and by denying his request for alternative sentencing. After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Jason R. Reeves, Shelbyville, Tennessee, for the appellant, Steven W. Davis.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Robert J. Carter, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from allegations that the Defendant raped his granddaughter by digitally penetrating her when she was fourteen years old. For this offense, a Bedford County Grand Jury charged the Defendant with rape and incest.

At the Defendant's trial, the parties presented the following evidence: The victim's mother testified that she had two children, the victim and her brother, and that the Defendant was her father. Her children spent a lot of time with the Defendant and his wife, their grandmother. The victim looked up to the Defendant, and he in turn was protective of her. The Defendant and his wife owned a store where the victim's mother

worked, and she often brought her children to do school work in a back room of the store while she worked. The victim's mother took her children to the store on December 26, 2013; the Defendant was there and his wife was not. The Defendant asked if the victim could help him price merchandise in one of the back rooms. The room had a door.

Three days later, after the victim spent the night at a friend's house, the friend's mother approached the victim's mother and asked to have a private conversation with her. During that conversation, the victim's mother learned of something "upsetting" that the victim had said had occurred between the Defendant and the victim. A group meeting with the victim's mother, the victim, their pastor, and the friend's mother was held, during which the victim affirmed that inappropriate physical contact had happened between she and the Defendant. At the end of the meeting, the victim's mother notified law enforcement.

The victim testified that she was fourteen years old at the time of the events in question. She said she had spent her entire life around the Defendant and saw him daily. She loved him and considered him her best friend. On December 26, 2013, while at the Defendant's store, the victim and the Defendant were alone in the back room, pricing merchandise. The Defendant closed the door to the room and locked it. The Defendant hugged the victim and, at some point during the hug, he put his hands inside the victim's pants and underwear and touched her bottom. The victim testified that this had happened before. He rubbed his hands on her bottom, touching the skin, and then he moved his hands to the victim's front and touched her vagina. His fingers went inside her vagina. The victim did not want the Defendant to touch her this way. It lasted approximately two minutes and made the victim feel "awful."

Later that same day, the Defendant took the victim back into the room, closed the door, and put his hands on her breasts under her bra. The Defendant asked the victim if he could touch her again, and she said "no." The next day, the victim told a friend what had happened, and the friend's mother told the victim's mother.

The victim testified that about a year before these events occurred, the Defendant asked to look at the victim's vagina because he was "curious," so the victim took off her clothes and let him look.

The victim's aunt testified that she confronted the Defendant, her father, in a telephone conversation about what he had done. The Defendant told her he was sorry and that he "only touched" the victim and did not have intercourse with her.

Detective Carol Jean, a Shelbyville Police Department detective, stated that she investigated this case, starting by interviewing the victim's mother and later interviewing

the victim. Detective Jean described the victim as traumatized and very upset, and said that it was "extremely difficult" for the victim to talk about what had happened. The victim described the Defendant's sexual conduct to Detective Jean consistently with the victim's testimony at trial.

Detective Jean interviewed the Defendant on February 6, 2014, which was recorded on video. A portion of the video was played for the jury, during which the Defendant denied digitally penetrating the victim.

Based upon this evidence, the jury convicted the Defendant of attempted rape and attempted incest.

## B. Sentencing

The following evidence was presented at the sentencing hearing: The victim's mother testified that she knew the Defendant had had an affair in the past and to her knowledge it was with a teenage girl. She testified that him touching the victim in December of 2013 was not an isolated incident and that it had happened before. The victim's mother stated that the Defendant needed to be incarcerated to prevent him from touching another child. The victim went to counseling after the incident for almost a year and was diagnosed with Post-Traumatic Stress Disorder. In the aftermath of the incident, the victim had trouble sleeping, had nightmares, and was afraid of seeing the Defendant out in public. The victim's mother stated that she felt the Defendant was a danger to society and needed to be in jail for as long as possible so that he could not "hurt another girl."

The victim's mother stated that, when the incident in the store's back room occurred, she considered the victim to be under the Defendant's supervision while she worked at the front of the store. She agreed that the Defendant was frequently entrusted with the care of her children at that time in their lives.

The victim's aunt testified that she recalled learning that the Defendant had had a sexual affair with one of her classmates, a fifteen-year-old girl, when they were in high school. The victim's aunt recalled that, when she was a teenager, she had bad cramps in her legs in the middle of the night. She asked her mother to massage her legs, but the Defendant offered to do it; while massaging her legs, the Defendant penetrated her vagina with his fingers. She later attempted suicide and lived with many repressed memories of the abuse. On cross-examination, the victim's aunt testified that she and her sisters were also molested by their mother's brother.

The victim testified that the Defendant had been her best friend and that she loved

him very much. She described her life as being "rocked" when she told someone about the abuse and said that the "hurt" was "unbearable." The victim stated that she might not ever get over what had happened to her and that it still haunted her. The victim said that she would always struggle because of the Defendant's actions. The victim focused on the fact that the Defendant was not remorseful and continued to deny the abuse. Following the abuse, the victim had difficulty trusting people.

The victim stated that the Defendant had sexually abused her prior to the events that resulted in the indictment in this case. That abuse began approximately two years prior. The victim and the Defendant would be lying on the couch together, and the Defendant would put his hands inside the victim's pants and sometimes inside her underwear. His hands would touch her vagina on some occasions.

The victim's father testified that the Defendant had been present throughout the victim's entire life and that the victim's family had lived with the Defendant for a period of time. His family spent "days and weeks" at the Defendant's house. The victim's father said that, in hindsight, he understood that the Defendant was grooming his daughter for her trust. The impact of the Defendant's actions on the victim's family was great, impacting the Defendant's wife, significantly, because she wanted to be with the victim but also wanted to be with the Defendant and knew that both could not now happen.

On behalf of the Defendant, Dr. Marcus Lee, a family practitioner, testified that the Defendant was a member of a ministry at his church, Highland Baptist Church where Dr. Lee was a teacher and deacon. The Defendant joined the ministry beginning in March 2014 and Dr. Lee got to know him personally as an upstanding individual. The Defendant told Dr. Lee that he was having "problems" with his family and showed a lot of remorse over those problems. Dr. Lee stated that he felt the Defendant was not a threat to society, Dr. Lee's own children, or anyone in his church. Dr. Lee testified that the Defendant had health problems and likely had only ten years to live.

Two members of the Defendant's community testified that the Defendant was a good man who had a good relationship with his grandchildren. None of the individuals felt that the Defendant had been inappropriate towards his own grandchildren or any other children he was around. They had never seen him be anything but loving. They testified that he was a hard worker.

The Defendant's wife testified that she felt the Defendant was a changed man and that he was not a risk to the community or his family. She stated that she needed his financial help and that she relied on him for help with her home.

Based upon this evidence and the arguments of the parties, the trial court issued an order stating that the Defendant was a Range I, standard offender. The trial court applied enhancement factor (1), that the Defendant "has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range," T.C.A. § 40-35-114(1), finding the following:

> [T]here was numerous credible incidences of sexual misconduct presented by [the victim] which favor application of this factor. These included making her disrobe so the Defendant could look at her, groping her buttocks and sliding his hands in her pants whether he reached her vaginal area or not. Arguably, depending on [the victim's] age at the time, these incidences constitute offenses such as sexual battery, sexual battery by an authority figure, sexual contact with a minor, aggravated sexual battery, and offensive touching. The State argued at trial the Defendant was engaged in "grooming" the victim to see, little by little, how far he would be allowed to go. This theory is supported by the evidence as the incidences were disclosed after the Defendant made his most daring move.

The trial court also considered enhancement factor (6), that "the personal injuries inflicted upon . . . the victim was particularly great." The trial court found:

> [The victim] sought counseling for P.T.S.D. following the incident for which the Defendant was convicted. This lasted for a period of about one year. She feels as though she cannot trust anybody. She asked "God for peace because I couldn't find peace." There were a lot of rough, sleepless nights, some involving nightmares. [The victim] seemingly has finally come to terms with the situation. However, based upon the observance of [the victim] and her testimony, it is apparent that she has suffered as much psychologically due to the severance of her relationship with the Defendant, who she characterized as her "best friend," as the act he committed.

> The court is cognizant that to apply this factor, the injury must be greater than normally sustained by the act. It is conceded the injuries, fortunately, in this case do not rise to the level of the most severe examples . . . .

> While the court would not give full weight to this factor, it will give some credence based upon the forgoing. It will not, however, give it nearly as much weight as enhancement factor 1 and particularly 7 and 14 which deserve the most weight.

The trial court next applied enhancement factor (7), that "the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement." § 40-35-114(7).  The trial court found:

> This was a case of physical sexual obsession . . .  Little by little, the Defendant made advances upon the victim.  He took advantage of a naïve and trusting child who returned his affection but not in the way of the Defendant.  He used the victim's propensity to hug her "Pops" as a spring board to advance himself upon her.  He had the victim undress when she was beginning to develop as a female.  The Defendant groped the victim's buttocks.  He stuck his hand in her pants while they would lie on the couch watching television.  Additionally telling is this occurred over a one or two year time period indicating this provided some measure of excitement or pleasure.  The court places considerable weight on this factor.

Lastly, the trial court applied enhancement factor (14), that "the defendant abused a position of public or private trust[.]" *Id.*  The trial court stated:

> While it would seem this factor would be inherent due to the kinship of the victim and the Defendant, it is not automatic.  In this case, the Defendant did ask permission of the mother to take the victim to the back room [of the store to price merchandise], indicating he was given authority over the victim.  Furthermore, the [D]efendant stood in a position of confidence, reliability, and faith over the victim.  The victim and the [D]efendant did activities together wherein she would be in his care.  The victim implicitly trusted the Defendant, as this was her "Pops".  Certainly this factor applies to the attempted rape conviction.

The trial court stated that it gave little weight to the mitigating factors presented by the Defendant.  Factor (1) advanced by the Defendant was that his conduct had not caused serious bodily injury; the trial court found that, although the victim did not suffer physical bodily injury, she suffered psychological trauma that required counseling.  The trial court further found that factor (11) advanced by the Defendant, that, although guilty, the Defendant committed the offense under "such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct," did not apply.  The trial court stated that the Defendant's conduct was planned and could have been avoided.  The trial court imposed a sentence of six years for the attempted rape conviction and four years for the attempted incest conviction.  The trial court ordered that the sentences be run concurrently.

6

The trial court then addressed the issue of alternative sentencing, stating that it was considering the following factors: (1) Presentence report; (2) The Defendant's mental and physical health; (3) The circumstances of the offense, which it found weighed heavily against the Defendant; (4) The Defendant's prior criminal history, which, due to the fact that the Defendant had a single speeding ticket on his record, the trial court found weighed in favor of the Defendant; (5) The Defendant's previous action and character, which it found weighed in favor of the Defendant; and (6) The potential for rehabilitation and risk of reoffending, which the trial court addressed as follows:

> While the court notes the [D]efendant seemingly abided by orders not to have contact with the victim and family, there is concern about the Defendant's attraction with [the victim] and/or females of that age given the totality of the circumstances at trial and sentencing. Furthermore, what the court perceives as the Defendant's calculated conduct in "grooming" the victim and his second sexual assault by groping the victim's breast later in the day these events occurred does not speak well.

The trial court addressed factor (7), whether the Defendant would abide by the terms of probation, which the trial found related to factor (6), and deemed factor (7) "neutral." The trial court next addressed factor (8), whether or not the interests of society in being protected from the Defendant's possible future criminal conduct were great. The trial court characterized this factor "concerning" because of the evidence of the Defendant's other unlawful sexual contacts with other females, including a "purported affair" with a minor, and his cultivation of the victim over a period of time. The trial court found that factor (8) weighed slightly in favor of the Defendant. The trial court addressed factor (10), whether or not a sentence of full probation would unduly depreciate the seriousness of the offense, as follows:

> This event was not a single, unplanned incident of indiscretion. It was a relationship long cultivated by the Defendant in progressive acts of preparation. On the day in question, the Defendant asked permission of the victim's mother for the victim to accompany him to the back room of the store. He subsequently locked the door, an act which he had not previously done. He then began with a hug. He proceeded to place his hands inside the back of the victim's pants moving around to the front and, either digitally or attempted to digitally penetrate her. Once the act was finished, he left on an errand with the victim only to return her, again, to the back room running his hands under her shirt groping her breasts. An act the victim stated had never previously occurred. It was only after the victim finally disclosed this and other behavior on the part of the Defendant did he stop. Had these acts not been disclosed, the Defendant would have

assuredly continued with his pursuit of ever progressing sexual assaults of the victim. The evidence convincingly bears witness to this.

While there are admittedly factors favorable to alternative sentencing, factors which are rather neutral and some factors unfavorable to the Defendant, the court is of the opinion the acts are of such a reprehensible character it outweighs other factors favorable to alternative sentencing. Considering the totality of the evidence to rule otherwise would depreciate the seriousness of the offense. Hence, alternative sentencing is denied for the reason stated above.

. . . .

This was a highly emotionally charged case. While certainly understandable, there are times the witnesses were difficult to control, bent on extracting as much punishment as possible. However, the court must contain its ruling on the law and the facts and not emotion. The silver lining was the victim. She was a very impressive, articulate, pleasant and intelligent young lady who is seemingly determined to rise beyond the situation. She was often the adult in the room. As mentioned previously, the victim leaves the court with the impression she is as devastated by the breach of trust and the severance of ties with her grandfather as much as the acts he committed.

The trial court denied the Defendant's request for alternative sentencing. It is from these judgments that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it applied enhancement factor (6) and when it denied the Defendant's request for alternative sentencing.

### A. Enhancement Factor

The Defendant contends that the trial court erred when it applied enhancement factor (6), that the personal injuries inflicted on the victim was particularly great. He asserts that there was no showing of evidence that the victim was "injured in any manner that is more serious or more severe than that which normally results from this offense." The State counters that the trial court properly found that this enhancement factor applied and that even if it was misapplied, the application of three additional enhancement factors are supported by the evidence. We agree with the State.

8

"[S]entences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.* at 554-55; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707. The defendant bears "[t]he burden of demonstrating that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

The trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made on the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2014); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from a trial court's sentencing decision. *Bise*, at 708. A reviewing court should not invalidate a sentence on this basis unless the trial court wholly departed from the principles of the Sentencing Act. *Id.* at 707. So long as there are other reasons consistent with the purpose and principles of sentencing, a sentence within the appropriate range should be upheld. *Id.*

We conclude that the trial court properly sentenced the Defendant. The trial court considered the relevant principles and sentenced the Defendant to a within range sentence. The evidence presented at trial and during the sentencing hearing supports the trial court's application of enhancement factor (6), that the personal injuries inflicted on the victim was particularly great. While the trial court did not give great weight to this

factor, and relied heavily on the remaining three it applied, the evidence supports the trial court's determination that victim's emotional injuries were particularly great, given that the Defendant was her grandfather and best friend, and that she suffered from PTSD as a result of these events, which necessitated a year of counseling. However, even if the trial court misapplied this enhancement factor, as we have stated, the misapplication of a single enhancement factor does not void the Defendant's sentence. *See Bise* at 708. Further, there was ample evidence to apply the additional enhancement factors, which the Defendant does not contest. As such, the Defendant is not entitled to relief on this issue.

## B. Alternative Sentencing

The Defendant contends that the trial court erred when it denied his request for an alternative sentence because the factors considered by the trial court weigh in favor of granting the Defendant's request. The State responds that the seriousness of the offense justified the trial court's denial, and that the Defendant's repeated attempts to minimize his conduct further justify the trial court's decision. Lastly, the State contends that the Defendant has not shown that the trial court abused its discretion. We agree with the State.

As previously stated, "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). We also reiterate that the defendant bears "the burden of showing that the sentence is improper." *Ashby*, 823 S.W.2d at 169. A trial court's decision regarding probation will only be invalidated if the court "wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014). Under an abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Id*. at 475.

With regard to alternative sentencing, Tennessee Code Annotated section 40–35–102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence

imposed on the defendant is ten years or less. T.C.A. § 40-35-303(a) (2014). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he or she is a suitable candidate for probation. T.C.A. § 40-35-303(b) (2014); *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App.1995) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. *Bingham*, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis considering "the nature of the offense and the totality of the circumstances . . . including a defendant's background." *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (quoting *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986)). In determining if incarceration is appropriate in a given case, a trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1) (2014). "When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public." *State v. Brian Allen Cathey*, No. E2015-01284-CCA-R3-CD, 2016 WL 2641766, at *3 (Tenn. Crim. App., at Knoxville, May 6, 2016) (citations omitted). The court should also consider the defendant's truthfulness. *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103.

In this case, after much thoughtful consideration, the trial court denied the Defendant's request for alternative sentencing based on multiple factors, including the circumstances of the offense and the risk of depreciating the seriousness of the offense, both of which the trial court stated weighed heavily against a granting of an alternative sentence. The trial court considered multiple factors, which it deemed weighed in favor of the Defendant's request; however, after extensive consideration as detailed in its sentencing order, the trial court concluded that "the [Defendant's] acts are of such a reprehensible character it outweighs other factors favorable to alternative sentencing. Considering the totality of the evidence to rule otherwise would depreciate the seriousness of the offense."

The evidence presented at trial and at the sentencing hearing established that the victim was traumatized and hurt by the Defendant's actions and that the impact on the Defendant's family was substantial. Both the nature of the Defendant's relationship to the victim and the violation of her trust in him were particularly detrimental to the victim. Mitigation witnesses stated that the Defendant did not have inappropriate sexual contact with other children, but the victim's mother testified that the Defendant needed to be incarcerated to prevent him from touching other children. The Defendant's inappropriate sexual behavior towards the victim lasted over a period of two years. Based on this evidence, we conclude that the Defendant has not established that the trial court abused its discretion by denying him an alternative sentence. The Defendant is not entitled to relief.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE